Azor L. TOOLE, Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY, a corporation,
Defendant.

Civ. A. No. 1036.

United States District Court
E. D. South Carolina,
Columbia Division.

Feb. 2, 1965.

William H. Gibbes, Berry & Gibbes, Columbia, S. C., for plaintiff.

E. W. Mullins, Nelson, Mullins, Grier & Scarborough, Columbia, S. C., for defendant.

WYCHE, District Judge.

On or about February 20, 1961, the plaintiff had an automobile accident with James Rogers, as a result of which he received certain personal injuries and property damage. Prior to the accident, on November 19, 1960, the defendant issued and delivered to James Rogers its automobile liability insurance policy under which James Rogers was entitled to protection for one year from the date of the issuance of the policy.

Plaintiff brought suit against James Rogers to recover damages for the personal injuries and property damage which he had sustained in the accident and recovered a judgment against James Rogers in the amount of Fourteen Thousand ($14,000.00) Dollars. The plaintiff then called upon the defendant to pay the judgment and defendant denied any liability therefor on the ground that the policy had been duly and properly cancelled in accordance with the terms of the policy on December 28, 1960, and hence James Rogers had no insurance coverage at the time of the accident.

The plaintiff then instituted the present suit against the defendant, alleging that under the terms of the policy and as a result of the judgment which he had obtained against James Rogers, the defendant was liable to him for the payment of the judgment up to the amount of the policy limits. The policy limits were Ten Thousand ($10,000.00) Dollars, for personal injuries to one person and Five Thousand ($5,000.00) Dollars, for property damage. The parties have stipulated that if the plaintiff is entitled to recover, such recovery would be Ten Thousand ($10,000.00) Dollars for personal injury, and Five Hundred, Thirty Six and 46/100 ($536.46) Dollars, for property damage, or a total of Ten Thousand, Five Hundred, Thirty Six and 46/100 ($10,536.46) Dollars, so that the sole issue in this case is whether or not the insurance policy in question had been properly and effectively cancelled prior to the date of the accident in which the plaintiff received his injuries.

The case was tried before me without a jury.

The parties filed a Stipulation of Facts and a certified copy of the policy was introduced in evidence without objection.

In compliance with Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. I find the facts specially and state my conclusions of law thereon, as follows:

## FINDINGS OF FACT

Jurisdiction is based on diversity of citizenship and the requisite jurisdictional amount.

The insurance policy here involved contains the following provision with reference to cancellation thereof: "This policy may be cancelled by the Named Insured by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

"If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation."

The policy also contains the following provisions: "No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder."

Under the facts in this case, the policy in question had been effectively cancelled prior to the date upon which the plaintiff was involved in an accident with James Rogers and at that time the defendant had no insurance in force and effect with respect to the automobile which had previously been covered by said policy.

## CONCLUSIONS OF LAW AND OPINION

This Court has jurisdiction of the parties and of the subject matter. 28 U.S. C.A. § 1332.

The sole question to be decided in this case is whether the defendant Nationwide Mutual Insurance Company had in force and effect a valid automobile liability insurance policy insuring James Rogers' automobile at the time of the accident. The decision of that question depends upon whether or not the policy had been properly and effectively cancelled prior to the accident.

The defendant contends that the policy was cancelled in accordance with its terms, effective December 28, 1960, at 12:01 a. m., but plaintiff contends that such cancellation was not effective for three reasons, to-wit, (1) That a policy of automobile liability insurance issued in compliance with the Financial Responsibility Laws of the State of South Carolina, in order for insured to secure motor vehicle license plates, cannot be effectively cancelled without notification of such cancellation being sent to the South Carolina Highway Department, as required by the statutory laws of the State of South Carolina; (2) That a policy of automobile liability insurance issued in compliance with the Financial Responsibility Laws of the State of South Carolina, in order for insured to secure motor vehicle license plates, cannot be effectively cancelled without the return to the insured person of the entire amount of the unearned premium; and (3) A policy of automobile liability insurance issued in compliance with the Financial Responsibility Laws of the State of South Carolina, in order for insured to secure motor vehicle license plates, cannot be effectively cancelled for non-payment of premium prior to the expiration of at least ninety (90) days following the filing of a liability insurance certificate. (South Carolina Highway Department Form 402).

I have concluded that none of these contentions are sound and that the policy was effectively cancelled in accordance with its terms and the applicable statutory law of South Carolina.

The basic error in the plaintiff's first contention is that he assumes that the policy was filed in compliance with the South Carolina Safety Responsibility Act of 1952, as amended, which requires the filing of a certified policy after the motorist has had an accident or after his driver's license has been revoked.

The South Carolina Safety Responsibility Act originally adopted as Act No. 723, Acts of 1952, has been amended by Act No. 208, Acts of 1955; Act No. 311, Acts of 1959; and, Act No. 642, Acts of 1960. The Act, as amended, is incorporated in Section 46–701 through Section 46–750.33, 1960 Supplement to the South Carolina Code of Laws. This Act is sometimes referred to as "one bite legislation" in that it does not become effective until a driver has become involved in an accident, or has had his driver's license suspended. After the incident has occurred which invokes the Act, the driver involved must maintain "proof of financial responsibility" which is usually liability insurance. A carrier issuing insurance to satisfy the terms of the Act must file a written certificate with the Highway Department (SR–22) certifying that there is in effect an insurance policy for the benefit of the person required to furnish proof of financial responsibility. Section 46–750.5, 1960 Supplement of the South Carolina Code of Laws. The policy so certified cannot be cancelled within ninety (90) days, Section 46–750.5, nor can it be cancelled for non-payment of premium or for other reasons until ten (10) days after a cancellation or notice of termination is filed with the Department. Acts of 1952, 47 Statutes, p. 1853, now appearing as Section 46–750.26, Code of Laws of 1962.

The fallacy in the plaintiff's argument is that he cites and relies on the section of the Code providing for the method of cancellation of a certified policy, whereas the Stipulation of Facts shows that it was a non-certified policy. In other words, it was a voluntary policy which

**128**

the assured did not have to take out unless he chose to do so. See, Barkley v. International Mut. Ins. Co., 227 S.C. 38, 86 S.E.2d 602, 603.

The Safety Responsibility Act of 1952 did not require a motorist to carry insurance until after he has had an accident. This left those who carried insurance exposed to the possibility of financial loss from a collision with an uninsured and financially irresponsible motorist. The General Assembly of South Carolina sought to remedy this by the adoption of the Uninsured Motorist Act as a means of shifting the cost of the uninsured motorist's negligence to the uninsured motorist himself.

Therefore, every person who registers and licenses a motor vehicle in this State must show that this vehicle is one as to which there is a liability insurance policy in effect or he must pay the uninsured motorist fee.

South Carolina does not have compulsory liability insurance, as some few states have, because under the Uninsured Motorist Act the motorist has an option of paying Twenty ($20.00) Dollars, into the uninsured fund and operating his car as an uninsured motorist. The Legislature did not intend to authorize the Highway Department to revoke the license of a motorist who had no liability insurance. The alleged insured in this case, after his policy was cancelled did not have to furnish evidence of financial responsibility by showing that he had a liability policy in effect, but he had the option, if he so chose, of paying Twenty ($20.00) Dollars, and operating his car as an uninsured motorist.

Section 46–750.26 of the South Carolina Code of Laws, requiring ten (10 days' notice to the Highway Department before a certified policy can be cancelled, and upon which the plaintiff relies, has no application to the policy involved in this suit because such policy was not a certified policy.

The only South Carolina statute which has any application is the Act of 1959 (1959, 51 St. at Large, p. 567), now appearing in the 1962 Code of Laws of South Carolina, as Section 46–138, which provides: "Upon the termination of insurance by cancellation or failure to renew, notice of such cancellation or other termination shall be filed by the insurer with the Department not later than five days following the effective date of such cancellation or other termination."

Neither counsel for plaintiff nor for the defendant has cited any South Carolina case dealing with the construction of this statute, and I have not been able to find any.

It seems to me, however, that the plain language of the statute contemplates that the policy has been effectively cancelled prior to the sending of the required notice to the Highway Department. The statute provides for notice to the Highway Department "[u]pon the termination * * * or failure to renew". (Emphasis added) Hence the policy is terminated before notice is required to be sent to the Highway Department. Notice to the Highway Department follows cancellation. Notice of cancellation could not be mailed to the Highway Department if there had been no cancellation.

The language of this statute relative to notice of cancellation being sent to the Highway Department is in contrast with the provision of the South Carolina statute relating to cancellation of a "certified policy". By the terms of the latter statute it is plain that the policy cannot be cancelled or terminated until at least ten (10) days after a notice of cancellation or termination has been filed with the Department. On the other hand, the language of the statute providing for notice to be given to the Highway Department after a cancellation of a voluntary policy makes it clear that cancellation of such policy is not conditioned upon the statutory notice to the Highway Department.

██ I have, therefore, concluded that the failure of the insurance company to give the Highway Department notice of such cancellation or termination not later

than five (5) days following the effective date of such cancellation or other termination, as required by the Act of 1959, would not continue the policy in effect. The provisions of the statute read together plainly indicate that effectiveness of cancellation should not depend on notice to the Highway Department.[1]

The second position of the plaintiff is that the policy was not effectively cancelled because the insurance company failed to return to the insured person the entire amount of the unearned premium.

According to the Stipulation of Facts it appears that the insurance company delivered to the insured a check in the amount of Fifteen and 80/100 ($15.-80) Dollars, representing the unearned premium on the policy and that the insured cashed such check and kept the proceeds derived therefrom. I would construe this Stipulation to mean that the parties are not raising any question as to whether or not a proper refund of the unearned premium had been made to the insured. However, the question is of no consequence since the policy here involved provides: "Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, *but payment or tender or unearned premium is not a condition of cancellation*." (Emphasis added)

The South Carolina Supreme Court has recently held, in several cases, that under a cancellation provision such as here involved that "payment or tender of unearned premium is not a condition of cancellation". See, McElmurray v. American Fidelity Fire Ins. Co., 236 S.C. 195, 113 S.E.2d 528; Moore v. Palmetto Bank & Textile Ins. Co., 238 S.C. 341, 120 S.E.2d 231; Nance v. Blue Ridge Ins. Co., 238 S.C. 471, 120 S.E.2d 516.

The plaintiff's third contention is that a policy of automobile liability insurance issued in compliance with the Financial Responsibility Laws of South Carolina cannot be effectively cancelled for non-payment of premium prior to the expiration of at least ninety (90) days following the filing of the liability insurance certificate (South Carolina Highway Department Form 402) as required by the statute.

The statute which the plaintiff cites in support of this contention, Section 46–748, Code of Laws of South Carolina 1962, refers to a certificate of insurance (a certified policy) filed by the insurance company for an insured who has been compelled to furnish evidence of financial responsibility by reason of his either having a prior accident or having his driver's license suspended. As already stated the policy here involved was a voluntary policy and was not the type of policy contemplated by Section 46–748, Code of Laws of South Carolina 1962. See, State Farm Mutual Automobile Ins. Co. v. Cooper (CA 4) 233 F.2d 500 (1956).

The plaintiff further contends that the Order of the Insurance Commissioner of August 15, 1960, (copy of which is attached to the Stipulation of Facts) has the effect of prohibiting the cancellation of all automobile liability policies issued in this State for non-payment of premium prior to the expiration of at least ninety (90) days following the filing of the liability insurance certificate (South Carolina Highway Department Form 402) as required by statute. The statutory laws hereinabove referred to have no such requirement as to a voluntary or non-certified policy and the Insurance Commissioner has no authority to promulgate rules and regulations inconsistent with the existing law. Furthermore, before any Or-

1. I also note that the North Carolina Court, as well as the Court of Appeals of New York, in construing a somewhat similar statute, reached the same conclusion as I have reached here. See, Nixon v. Liberty Mutual Insurance Company, 258 N.C. 41, 127 S.E.2d 892; Kyer v. General Cas. Co. of America, 14 A.D. 2d 649, 218 N.Y.S.2d 185; Appeal denied 11 N.Y.2d 642, 225 N.Y.S.2d 1026, 180 N.E.2d 895.

**130**

der of the Insurance Commissioner can become effective the statutory laws of the State require that the same be filed with the Secretary of State. Code of Laws 1952, Sections 1–11 to 1–15; Code of Laws 1962, Section 1–11. See also, Lake v. Mercer et al., 216 S.C. 391, at page 395, 58 S.E.2d 336; Davis v. Query et al., 209 S.C. 41, 39 S.E.2d 117.

For the foregoing reasons, I conclude that the policy in question had been effectively cancelled prior to the date upon which the plaintiff was involved in an accident with James Rogers and at that time the defendant had no insurance in force and effect with respect to the automobile which had previously been covered by said policy.

The defendant is, therefore, entitled to judgment against the plaintiff, that he take nothing by reason of this action.

Entry of appropriate judgment in favor of defendant is directed accordingly, and

It is so ordered.

